(No. 13331.—Judgment affirmed.)

THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MOLLIE LANE, Admx. Plaintiff in Error.)

*Opinion filed October 23, 1920.*

1. CARRIERS—*railroad company does not act as a common carrier in transporting mail.* In the transportation of mail the railroad company acts as agent of the government and not as a common carrier, and the railroad company acts neither as a private nor as a common carrier for the individual sending the mail.  ·

2. SAME—*transportation of interstate mail is interstate commerce.* Although a railroad company does not in the transportation of mail act as a common carrier in the legal significance of that term, it is nevertheless engaged in interstate commerce when it carries mail destined from one State to another.

3. WORKMEN'S COMPENSATION—*when an employee assisting in transportation of mail is engaged in interstate commerce.* An employee engaged as a freight trucker and laborer at a railroad station is injured while employed in interstate commerce where the injury is received while riding on an elevator on his return trip to his employer's depot after he has delivered interstate mail at the station of another railroad company by which the mail is to continue its journey.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. JOHN H. MARSHALL, Judge, presiding.

EMERY ANDREWS, and R. G. REAL, for plaintiff in error.

GEORGE B. GILLESPIE, (F. L. LITTLETON, and VAUSE & KIGER, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Mollie Lane, administratrix of the estate of her deceased husband, J. M. Lane, filed a claim for compensation before the Industrial Commission on account of the death of her husband, who was killed in the course of his employment with the Cleveland, Cincinnati,

Chicago and St. Louis Railway Company. The arbitrator who heard the evidence made an award in favor of the plaintiff in error in the sum of $2512. On review the Industrial Commission confirmed the award. The record was reviewed by the circuit court of Coles county by *certiorari*. The circuit court quashed the record and entered judgment for defendant in error. A writ of error was allowed for a review of the cause in this court.

On June 3, 1918, the deceased was in the employment of said railroad company as a freight trucker and laborer at its freight station at Mattoon. The railway company at that point handled both interstate and intrastate commerce. His duties were to handle United States mail and freight, keep the freight house swept, cleaned and in order, clean the lanterns and load and unload stock and freight, both interstate and intrastate. At 10:30 o'clock P. M. on said date Lane took the mail pouches which had arrived at Mattoon from St. Louis, Missouri, on train No. 4 of defendant in error, to the Illinois Central depot, to be placed on Illinois Central trains No. 22 and No. 3. The mail was destined for and to be delivered at points within and without the State of Illinois. The Illinois Central station is lower than the passenger station of the defendant in error, and a freight elevator is used by the employees of both roads in the course of their work when going from one depot to the other because of the difference in the elevations of the depots. When Lane had deposited the mail pouches on the platform at the Illinois Central station he started back to the station of defendant in error, using the freight elevator. He was going to eat his lunch and then go to the freight house to assist in handling both interstate and intrastate freight. He was injured while riding on the elevator and died as a result of his injuries.

There is no dispute as to the facts in this case. The sole question for decision is whether the facts bring it within the Workmen's Compensation act of Illinois, or whether

deceased was engaged in interstate commerce at the time of the accident and as a result thereof the case falls within the purview of the Federal Employers Liability act.

Plaintiff in error insists that United States mail cannot be considered as commerce, and that a railroad company engaged in the transportation of mail is an instrumentality or agent of the government and not a common carrier within the purview of the Federal Liability act and not engaged in interstate commerce and therefore not subject to the provisions of that act. Several cases are cited and relied upon in support of that contention. One of them is *Atchison, Topeka and Santa Fe Railroad Co.* v. *United States,* 32 Sup. Ct. 702, in which the railroad company sued the United States to recover the reasonable value of railway post-office car service furnished to and actually used by the post-office department. In the course of that decision the Supreme Court held that the railroad company in carrying the mails was not hauling freight, nor was it acting as a common carrier with corresponding rights and liabilities, but in this respect it was serving as an agency of the government and as much subject to the laws and regulations as any other branch of the post-office. That case cannot be held decisive of the question now before us. The government, on such cars as were furnished by the railroad company in the case just cited, furnishes its own mail clerks, and they ride in the cars, handle, sort, distribute, place the mail in the pouches and throw off the pouches at the various stations to which the mail is destined. The railroad company is not the real transporter of the mail but only transports it as an agent of the government, and it has never been considered that the relation between the government and the railroad company is that of a common carrier.

In the case of *Boston Ins. Co.* v. *Chicago, Rock Island and Pacific Railroad Co.* (Iowa) 59 L. R. A. 796, the suit was to recover the value of a registered mail package, which the railroad company, as one of the agencies of the

government for carriage of its mails, undertook to carry from Kansas City, Missouri, to Kinsley, Kansas, and which it was claimed was destroyed by fire at Volland, Kansas, caused by the negligence of the railroad employees. The Bankers Mutual Casualty Company paid the loss to the owner of the package, and the insurance company, which had re-insured the loss, re-paid the amount thereof to the casualty company and then sued the railroad company. The Iowa Supreme Court held that the railroad company carrying mail under contract with the United States government owed no duty to the sender of the particular registered package of mail which would give him a right of action in case the package was destroyed through the negligence of the railroad company's servants. The court also held in its decision that the railroad company in carrying the mail is neither a private nor a common carrier and owes no duty to the sender or to the addressee of mail matter; that the law makes it an instrumentality of government for the performance of acts in execution of functions assumed and controlled by it, and that, at best, the railroad company is simply a public agent or agency discharging public duties. To the same effect as this latter case are the holdings in the cases of *Bankers Mutual Casualty Co.* v. *Minneapolis, St. Paul and Sault Ste Marie Railroad Co.* 117 Fed. 434, (65 L. R. A. 397,) and *Foster* v. *Metts,* 55 Miss. 7. The further reason given for the holding in these cases is, that the sender of mail matter has no contract with the carrier of the mail bags and does not commit his mail matter to him but to the government, which has undertaken to receive, carry and deliver it. The railroad company does not carry for individuals or receive any compensation from them for carrying mail matter. Certainly, then, the railroad company could not be either a private or common carrier for such individuals.

There is no case decided by this court or by the Supreme Court of the United States that passes on the iden-

tical question now before us, so far as we are aware. The
latter court has passed upon several propositions that are
more nearly related to the question now under considera-
tion than those decided in the cases cited by plaintiff in er-
ror. In *International Text Book Co.* v. *Pigg,* 217 U. S.
91, the Supreme Court of the United States held that send-
ing the means of education by correspondence through the
mails is commerce. The same court has held that the trans-
mission of intelligence by means of the electric telegraph is
commerce, and that an electric telegraph company trans-
mitting such intelligence for hire is engaged in commerce.
*Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*
96 U. S. 1; *Western Union Telegraph Co.* v. *Texas,* 105
id. 60; *Leloup* v. *Mobile,* 127 id. 640; *Western Union Tele-
graph Co.* v. *Kansas,* 216 id. 1.

In *Marconi Wireless Telegraph Co.* v. *Commonwealth,*
(Mass.) Ann. Cas. 1916C, 214, where the question was
directly up for decision, the Supreme Court of Massachu-
setts held that the transmission and receiving of wireless
messages for hire to and from ships on the high seas and
to and from foreign countries is foreign commerce, and
that the company so transmitting and receiving messages
for hire is engaged in interstate or foreign commerce. If
the sending of wireless messages or messages by telephone
or telegraph for hire from State to State is engaging in
interstate commerce when done for individual persons, it
is none the less interstate commerce if done for the United
States government under contract for hire or under pro-
visions of the United States statutes. The same character
of intelligence is sent in letters by mail, the difference usu-
ally being that the messages by letter are more elaborate.
The carrier of this mail for hire from State to State is
engaged in interstate commerce. The government is the
principal in the transmission of letters, but a railroad com-
pany in transmitting such mail for hire for the government
is also, like its principal, engaged in interstate commerce.

As to the government it may not be a common carrier within the legal significance of that term, but it is nevertheless engaged in interstate commerce.  In the case at bar the defendant in error was, without question, at the time of this accident a common carrier engaged in transmitting from one State to another freight and merchandise for hire.  It was also engaged in interstate commerce in transporting the mails for hire.  That being true, Lane, as its employee, in carrying the mail from defendant in error's train to the Illinois Central train was engaged in interstate commerce, as was also the Illinois Central Railroad Company, which transported the mail after it was delivered to it by him.  The latter company was also a common carrier, and its trains were doing an interstate business in the transporting of freight and merchandise.

Our conclusion is that the Federal statute applies to this case, and therefore, under all the decisions on that subject, excludes any action under our State statutes.  The Federal statute provides that every common carrier by railroad, while engaged in commerce between any of the several States or territories, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, his or her personal representatives.  "The true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"  (*Shanks* v. *Delaware, Lackawanna and Western Railroad Co.* 239 U. S. 556.) We are supported in our conclusion in this case by two very strong and well reasoned cases rendered by the California and Massachusetts Supreme Courts, viz., *Zenz* v. *Industrial Accident Com.* 176 Cal. 304, and *Lynch* v. *Boston and Maine Railroad Co.* 226 Mass. 522.

Upon the second phase of the question we cannot agree with plaintiff in error's contention that Lane had completed

the task of delivering the mail to the Illinois Central depot, and that what he was intending to do at the time he was killed, or his next task, was the business in which he was then engaged. He had not returned to his employer's depot when he was injured. His return trip was as much an incident to and a part of his work of delivering the mail for the Illinois Central train as was his trip to that train. *Kusturin* v. *Chicago and Alton Railroad Co.* 287 Ill. 306.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*