No. 26,890.

R. E. HARRINGTON, *Appellee*, v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

COMMERCE — *Interstate Shipments — Continuous Shipment Under One Consignment — Attorney's Fees*. Wheat was shipped from Shelton, Neb., to Baker, Kan., and there unloaded into the consignee's elevator under a schedule giving him the privilege of shipping it within a year to Atchison, Kan., without further charge. The next day he loaded a like quantity of wheat from his elevator, together with a small amount additional, and shipped it to Atchison, the only further charge being for such additional amount, which was paid. He recovered a judgment against the carrier for $47.02 because of a shortage in the delivery at Atchison, together with $50 as an attorney's fee allowed by the Kansas statute. It is held that the shipment was interstate, and for that reason the Kansas statute did not apply and the allowance of the attorney's fee was error.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed March 12, 1927. Modified and affirmed.

*W. P. Waggener, O. P. May,* both of Atchison, and *T. M. Van Cleave,* of Kansas City, for the appellant.

*William K. Ward* and *Grant W. Harrington,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: R. E. Harrington sued the Missouri Pacific Railroad Company for a shortage of wheat shipped to Atchison, Kan., alleging that 124,800 pounds was shipped and only 121,850 pounds de-

Carriers, 10 C. J. p. 400 n. 35. Commerce, 12 C. J. p. 26 n. 76, 84. Courts, 15 C. J. p. 1064 n. 42.

livered, negligence not being alleged. He recovered a judgment for $47.02 on account of the shortage and for $50 as an attorney's fee. The judgment is not as a whole appealable, because less than $100 is involved, but the defendant appeals on the ground that the case involves questions of federal law. (R. S. 60-3303.) The questions to be determined are therefore necessarily confined to those relating to the federal constitution or statutes. (*Griggs v. Hanson,* 86 Kan. 632, 121 Pac. 1094.)

The wheat shipped to Atchison weighed 124,800 pounds. The claimed shortage amounted to 2,950 pounds. The defendant claims that of this 124,800 pounds all but 16,800 pounds was in the course of an interstate shipment. No effort was made to show that the shortage occurred in one part of the shipment rather than the other. The defendant makes the contention that nearly eight-ninths of the wheat was an interstate shipment and therefore no attorney's fee should have been allowed, the state statute on the subject (R. S. 66-259) not being applicable to losses in the course of interstate commerce. (*Atchison & Topeka Ry. v. Harold,* 241 U. S. 371, 378.) The plaintiff contends that the entire shipment was intrastate.

The question whether the shipment, or a large part of it, was interstate depends upon the effect in that regard of these facts, which are not in dispute:

On January 18, 1924, a car of wheat was delivered at the plaintiff's elevator at Baker, Kan., and unloaded into it. This wheat was billed and shipped from Shelton, Neb., and the plaintiff, the consignee, had the privilege for one year of storing, mixing or milling in transit at Baker, and sending the wheat or its products on to Atchison, without any charge other than the amount paid on delivery at Baker. The shipment to Atchison was made the next day. Of the wheat shipped from Baker to Atchison, 108,000 pounds was moved by the carrier to Atchison without additional charge because of the privilege already referred to. The charge for the shipment of the other 16,800 pounds was 10½ cents a hundred, which was paid. The 108,000 pounds was not the identical wheat shipped from Nebraska, but was grown in Kansas and had never been out of the state. It was, however, loaded into the car from the plaintiff's elevator into which the wheat from Nebraska had been unloaded. The old bill of lading had been surrendered, and a new one was issued, which contained these words, inserted by the plaintiff:

"108.000 lbs. origin Shelton, Neb., 27½ c. paid at Baker. Kansas, balance rate

to Atchison or K. C. free. 16,800 flat Baker to Atchison, Kansas 10½ c. 124,-800 total weight."

The plaintiff contends that the shipment from Baker to Atchison was intrastate. In the brief in his behalf it is said:

"In the case at bar there was no reconsignment of the original shipment of wheat moving from Shelton, Nebraska, at Baker, Kansas. The bill of lading covering the shipment of wheat from Shelton, terminated and was surrendered by the plaintiff at Baker, Kansas, January 18th, 1924. It then and there lost all of its force and effect. The movement of the new shipment of wheat from Baker, Kansas, to Atchison, Kansas, on the following day was under a new bill of lading, and a separate and distinct contract of shipment. It was truly Kansas wheat in a local Kansas movement, there being no grain in the shipment that had been received by plaintiff in shipment from points beyond the boundaries of the state of Kansas. There was no reconsignment of this shipment, but by reason of the provisions of defendant's published tariffs and by reason of the previous transactions upon which plaintiff had paid to the defendant certain amounts in its freight charges on shipments the defendant owed plaintiff the service of moving 108,000 pounds of grain between Baker, Kansas, and Atchison, Kansas, free of charge. The freight rate from Baker to Atchison was 10½ per hundred pounds, which would make the freight charges on the 124,800 pounds of wheat, loaded at Baker, amount to $130.62. Had the plaintiff paid this charge wholly in cash it is clear that there would be no possible way in which the shipment in question could be tortured into an interstate shipment. As defendant already owed plaintiff an equivalent in services to $113.40 freight charges, between the points mentioned, the defendant undertook, and it was mutually agreed, that this shipment should cancel this particular privilege of plaintiff, and obligation of defendant, by carrying at this particular time, 108,000 pounds of the wheat in this shipment from Baker to Atchison, free of charge. The plaintiff paying the full tariff rate of 10½ on the remaining 16,800 pounds of wheat in the car."

We think this reasoning is faulty in treating the arrangement under which wheat was carried from Baker to Atchison without additional charge as one by which the carrier owed the plaintiff the service of moving 108,000 pounds of grain from Baker to Atchison, free of charge. It is true the carrier was obligated to move to Atchison without further charge wheat out of his elevator which was not the same wheat that had been brought from Nebraska. It was, however, the representative of that wheat—a substitute for it, allowed because of the impracticability of preserving the identity of wheat stored with other wheat in the same receptacle. This is demonstrated by these extracts from the interstate commerce commission's regulations governing unloading in transit privileges:

". . '. Shipments of wheat originated at Shelton, Nebraska, destined to Atchison, Kansas, or Kansas City, Missouri, may be stopped and unloaded in

transit at Baker, Kansas, for the purpose of milling, cleaning, inspection, sacking, mixing, blending, grading storing, weighing or drying upon one rate from point of origin . . . to destination. . . .

"(c) In the movement of grain no distinction shall be made in the different varieties of the same kind of grain. When grain or the products of grain are blended or mixed, or the products of grain are manufactured from different varieties of the same kinds of grain, freight bills for any one of the component parts of the blend or mixture will be accepted as representative of the outbound shipment.

"(d) It is not practicable to preserve the identity of grain or seed unloaded into transit houses, but the same kind of grain or seed may be blended, mixed or milled, and an equal amount of the grain or any product thereof, less the loss in manufacture, may be forwarded on freight bill for any inbound grain entering into the blend or mixture."

Of the wheat shipped from Baker to Atchison, 108,000 pounds may be regarded as the representative and substitute for that amount of wheat which had been brought from Shelton, Neb., to Baker, such representative and substitute completing the interstate journey which the Nebraska wheat had begun, and for which full payment had been made according to the interstate schedule. Under the decisions of the federal supreme court we think this portion of the journey must be treated as interstate commerce, and the recovery having been had for a shortage in a shipment of wheat nearly eight-ninths of which was in the course of an interstate shipment, the attorney's fee should not have been allowed. The issuance of a new bill of lading for the movement of the wheat from Baker to Atchison did not take it out of interstate commerce. (*Atchison & Topeka Ry. v. Harold,* 241 U. S. 371.)

In *B. & O. S. W. R. R. Co. v. Seattle,* 260 U. S. 166, 171, it was said:

"Neither through billing, uninterrupted movement, continuous possession by the carrier, nor unbroken bulk, is an essential of a through interstate shipment. These are common incidents of a through shipment; and when the intention with which a shipment was made is in issue, the presence, or absence, of one or all of these incidents may be important evidence bearing upon that question. But where it is admitted that the shipment made to the ultimate destination had at all times been intended, these incidents are without legal significance as bearing on the character of the traffic. For instance, in many cases involving transit or reconsignment privileges in blanket territory, most or all of these incidents are absent, and yet the through interstate tariffs apply."

In the present case if the wheat from Nebraska had been unloaded into the plaintiff's elevator at Baker, and later the same wheat had been loaded into the car for shipment by itself to Atchison without further charge, it would seem very clear it was still in the course of

interstate commerce. Neither the fact that instead of the original wheat an equal amount drawn from the elevator into which it had been unloaded was sent to Atchison, nor the fact that an additional quantity, separately paid for, was sent with it, nor both these facts combined, appear to us to effect any substantial change in the situation so far as concerns the question whether the bulk of the wheat moved from Baker to Atchison in interstate commerce.

It follows that the allowance of the attorney's fee was error.

The defendant challenges the judgment for $47.02 upon various grounds, but as they involve the application of purely local law they involve no federal question, and are not subject to review where the amount in controversy is less than $100.

The judgment is modified by striking out the allowance for attorney's fee, and as so modified is affirmed.