No. 29,983.

BEN F. CRUSE, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

(299 Pac. 624.)

Opinion filed June 6, 1931.

*Luther Burns, J. E. DuMar*ṣ, both of Topeka, *E. S. McAnany, M. L. Alden* and *Thomas M. Van Cleave*, all of Kansas City, for the appellant.

*W. W. McCanles, F. M. Kennard* and *W.`J. Gresham*, all of Kansas City,. Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action to recover for personal injuries brought by plaintiff against defendant under the federal employers'' liability act. Plaintiff was employed in defendant's yards in Kansas City, and at the time of his injury was unloading truck sides from a

shipment that had come into the yards from Davenport, Iowa. The car from which the truck sides were being unloaded had arrived in the defendant's yards a few days prior to the date of unloading, and on account of the crowded condition of the track where the truck sides were to be unloaded the car was placed on coach track number one, to be removed from there as soon as arrangements could be made to unload same on track number three, the place assigned and previously determined for the unloading of said shipment.

Plaintiff stated that on or about May 1, 1929, he was in the employ of the defendant at Kansas City, as a laborer, assisting to unload a car of metal, called truck sides, each piece weighing approximately 740 pounds; that said pieces were being lifted from said car by means of a magnet, and while plaintiff was standing upon the ground attempting to adjust the placement on one of said pieces the defendant, its agents, etc., carelessly and negligently caused, allowed and permitted said piece to fall from said magnet and catch plaintiff's right hand and fingers between said piece and other iron and greatly injure him, as is later set out.

Plaintiff also alleges that the truck sides he was moving originated in a foreign state, Bettendorf, Iowa, and he contended this impressed the character of interstate commerce. Plaintiff says that the date of the origination of the shipment, date of arrival in Kansas City, date the car was placed on the track where it was being unloaded, and by what means the car was placed upon the track, and the consignor of the shipment, all are unknown to plaintiff, and though he has made diligent search he has been unable to procure this information, and these facts are within the knowledge of the defendant.

The defendant answered and alleged that the injuries resulted solely and proximately from his want of care and caution in conducting the work in a careful and prudent manner, and with the care and caution of an ordinarily prudent person. Defendant also alleged that the plaintiff was not entitled to recover under the federal employers' liability act, on the ground that he was not engaged in interstate commerce at the time, but that he was under and subject to the workmen's compensation act of Kansas, and that under the federal act the doctrine of assumption of risk was a bar to his recovery. The case was submitted under the federal employers' liability act and the jury returned a verdict in the sum of $10,000. On the motion for a new trial the court ordered judgment conditioned upon a remittitur of $2,500, and judgment was

finally entered for $7,500. Otherwise the motion for new trial was overruled, and the defendant appeals.

The principal question in the case and the one most argued by counsel is whether the case was one arising under the federal employers' liability act. Was the work in which the plaintiff was engaged when he was injured a part of interstate commerce or so closely related to it as to be practically a part of it? The car of truck sides, each of which weighed about 740 pounds, was billed and shipped from Davenport, Iowa, to the defendant at Kansas City, and it is conceded that it was interstate at least until it reached the railroad yards at Kansas City. When the train consisting of fifty-five cars reached the receiving yards where is was broken up, the car in question was switched over to the material yard and placed on what is called coach track number one. That track is used as an assembling track capable of holding forty to fifty cars forty feet long. The evidence shows without dispute that cars loaded with various commodities are placed on the assembly track to be later moved about and unloaded at different parts of the yards as the materials may be needed for construction or repairs of cars. The defendant was assembling material to carry on the program of rebuilding 500 cars which it was said could not be completed until the middle of December, 1929. The car in question was placed on the assembly track in the material yards on April 26, 1929, and on May 1, 1929, it was taken over to the rip track, number three, where it was being unloaded, and in that process the plaintiff was injured. It was shown that the assembly track was assigned to the storekeeper of the defendant, and that material which came in assigned to him was placed on that track and delivered to the storekeeper. The general yardmaster, when asked why the car was not placed on the track where it was to be unloaded, testified:

"Well, we always deliver it to the storekeeper on one track, which is an assigned track, and then he looks at the material and sees what it is, and then he places it just where he wants the car set to be unloaded."

The placing of such cars is done by a small yard engine which operates only in the material yard. Was the car that was unloaded four days after it was delivered to the storekeeper, and thereafter under his dominion and control, in interstate commerce, or was the plaintiff engaged in interstate commerce when he was unloading the car on another track where the material was to be used? The trial court in its instructions assumed and stated to the jury that—

"Under the undisputed testimony in this case, the defendant railway company and the plaintiff at the time and place of plaintiff's alleged injury were engaged in interstate commerce, and therefore this case is to be determined under the rules of law provided by the United States statute relating to the liability of common carriers by railroad to their employees in certain cases."

The defendant was the consignee of the shipment and the owner of the material. The train had reached the switching yard, its destination, where the train was broken up, and the car of material was then pushed over to the material yard and placed on the assembly track. It was there received by the storekeeper and was not to be unloaded from that track. It was to be inspected by him, and the car with the material was to be moved at some future indefinite time and unloaded in parts of the yard where the material was to be used in the rebuilding and repair of cars. The testimony of plaintiff was that the storekeeper was the one to receive the shipment and to direct the placing of the material received at points in the material yard where it was to be used in the construction and repair of cars. Under the undisputed evidence as to the reception of the building material by the storekeeper after it was placed on the assembly track, it is reasonably clear that it was a local movement after the interstate character of the shipment had ended. Thereafter the placing of the material was no more than a part of the internal economy of the material yard to be moved and placed where it was most needed to carry on the construction and repair work. It had been received and accepted by the consignee and owner, and was to be moved and unloaded at some future time when and where it chose to dispose of the material. The yard was somewhat like a manufacturing plant in which the material was to be moved from one part of the plant to another, which would be regarded as a local movement rather than a part of interstate traffic. The handling of this material after it had been received must be regarded as local in character. Scores of cases have been cited by counsel for and against the proposition which upon a first reading might lead to the view that some of them were not in harmony with others, but a closer inspection discloses distinguishing facts which explain to some extent the seeming conflicts in the decisions. Among the authorities which support the views we have expressed is, *Chi., Burlington & Q. R. R. v. Harrington,* 241 U. S. 177. A switchman was killed while engaged with other members of a crew in switching coal cars that had been standing on a storage track for a few days

and in transferring them to bins in the yard to be used for locomotives engaged in both interstate and intrastate traffic. The plaintiff's work was confined to that done in the state. His duty was confined to movements of coal cars from one part of an extensive terminal yard to another. It was held that there was no such close relation to interstate transportation in moving the coal to another place there to be used, as it might be needed, in interstate locomotives as to bring it within the federal employers' liability act. The court said:

"With the movement of the coal to the storage tracks, however, we are not concerned; that movement had long since ended, as it is admitted that the coal was owned by the company, and 'had been in storage in its storage tracks for a week or more prior to the time it was being switched into the coal chutes on the morning of the accident.' So, also, as the question is with respect to the employment of the decedent at the time of the injury '(*Illinois Central R. R. v. Behrens*, 233 U. S. 473, 478 [58 L. Ed. 1051, 1055, 34 Sup. Ct. Rep. 646, Ann. Cas. 1914C, 163]), it is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed. That duty was solely in connection with the removal of the coal from the storage tracks to the coal shed, or chutes, and the only ground for invoking the federal act is that the coal thus placed was to be used by locomotives in interstate hauls." (p. 179.)

In *Lehigh Valley R. R. Co. v. Barlow*, 244 U. S. 183, the plaintiff, a switchman, sought to recover damages under the federal act for injuries sustained while moving cars from sidings where they had been placed and left for a few days, to a trestle in the yards of the railroad company. The cars had been transported from a place in Pennsylvania to New York, and were the property of the company. It was held that the cars when later moved were not engaged in interstate commerce within the meaning of the federal act, as the interstate movement had terminated before they left the sidings. In *B. & O. S. W. R. Co. v. Settle*, 260 U. S. 166, it was held that—

"The mere fact that cars received on interstate movement are reshipped by the consignee, after a brief interval, to another point does not, of course, establish an essential continuity of movement to the latter point. The reshipment, although immediate, may be an independent intrastate movement. The instances are many where a local shipment follows quickly upon an interstate shipment and yet is not to be deemed part of it, even though some further shipment was contemplated when the original movement began. Shipments to and from distributing points often present this situation, if the applicable tariffs do not confer reconsignment or transit privileges." (p. 173 )

Other cases of somewhat similar import are: *Illinois Central R. Co. v. Behrens*, 233 U. S. 473; *Del. Lack. & West. R. R. v. Yurkonis*, 238 U. S. 439; *Schauffele v. Director General of Railroads*, 276 Fed. 115, *Certiorari denied*, 257 U. S. 661; *Erie R. Co. v. Collins*, 259 Fed. 172; *Shauberger v. Erie R. Co.*, 25 F. (2d) 297; *Davis v. Baltimore & O. R. Co.*, 10 F. (2d) 140; *Morrison v. Chicago, M. & St. P. R. Co.*, 103 Wash. 650, *Certiorari denied*, 249 U. S. 611. See, also, *Bumstead v. Railway Co.*, 99 Kan. 589, 162 Pac. 347; *Flanigan v. Railway Co.*, 108 Kan. 133, 193 Pac. 1077.

Among the authorities cited and relied upon by the plaintiff are: *Pedersen v. Del. Lack. & West. R. R.*, 299 U. S. 146; *St. L. San Francisco Ry. v. Seale*, 229 U. S. 156; *B. & O. S. W. R. R. v. Burtch*, 263 U. S. 540; *Rhodes v. Iowa*, 170 U. S. 412; *McNeill v. Southern Railway Co.*, 202 U. S. 543; *Harrington v. Missouri Pac. Rld. Co.*, 123 Kan. 35, 254 Pac. 379; *Brown v. Illinois Terminal Co.*, 319 Ill. 326; 2 Roberts Federal Liability of Carriers, p. 1435, § 747.

Without analyzing the authorities cited by plaintiff, it is enough to say that they do not appear to apply as closely to the facts of this case and the point under consideration as do those cited in support of the view we have taken. Under the circumstances disclosed by the record, the car of material lost its interstate character when it reached its destination and after it was received by the consignee and owner on the coach track number one of the material yards. It must be held that under the evidence the court was not warranted in instructing the jury that the plaintiff was engaged in interstate commerce at the time of the accident, within the meaning of the federal employers' liability act. Having reached this determination it is unnecessary to consider questions raised relating to the application of the act to the case, nor need we consider the claim of defendant that the verdict was an excessive award of damages.

For failing to sustain defendant's motion for a new trial the judgment is reversed and the cause remanded for further proceedings.