## No. 13,724.

Denver Union Terminal Railway Company
*v.* Industrial Commission et al.

(47 P. [2d] 392)

Decided June 17, 1935.   Rehearing denied July 1, 1935.

Messrs. Grant, Ellis, Shafroth & Toll, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. M. S. Ginsberg, Assistant, Mr. Philip Hornbein, Mr. Theodore Epstein, Mr. Donald M. Shere, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

THIS is a review of a judgment of the district court involving proceedings before the state Industrial Commission. The plaintiff in error, Denver Union Terminal Railway Company, will be referred to as the terminal company; the defendants in error, as the commission and claimant.

While in the employ of the terminal company, claimant was engaged in moving interstate mail from one interstate train to another by a terminal company truck at the Union Depot in Denver, and by a fall was injured in the course of his employment. For this injury he sought compensation through this proceeding before the commission. There is no dispute as to the nature or extent of the injury. The terminal company appeared, solely to deny the jurisdiction of the commission, and contended that the Federal Employers' Liability Act controls, to the exclusion of the state Workmen's Compensation Act and further that the case is exempted from operation of the state act by the Colorado statute of which section 4384, C. L. 1921, is as follows: "The provisions of this act shall not apply to common carriers engaged in interstate commerce nor to their employes."

On August 30, 1934, claimant filed his claim for compensation, and after appearances by all interested parties, a hearing was had before a referee of the Industrial Commission who made a finding to the effect that the commission had no jurisdiction over the terminal company, and denied the claim. Claimant petitioned for review and thereafter, on March 2, 1935, the commission made findings of fact and awarded compensation to the claimant, holding that the commission had jurisdiction. This award was made final by a supplemental award dated March 7, 1935. This matter was then brought to the district court, which on April 1, 1935, entered its judgment affirming the final award of the commission, and the terminal company seeks a reversal by this review.

The terminal company is incorporated as a terminal

railway company, empowered to acquire, own and maintain a union depot and terminal facilities for railroads for the reception and delivery of baggage, mail, express and passengers. For no profit, it operates, under a contract, a facility for six trunk line railroads as their only terminal. It owns the station, and tracks used by passenger trains entering and leaving the station, controls their operation on said tracks, sells tickets, transfers all baggage and mail between and from trains, and has sole control of all passengers boarding or leaving trains. It owns no railroad cars or locomotives, and does not, through its employees, actually handle the physical operation of the cars or locomotives of trains, but does own and physically operate tractors and trucks used for transporting mail and baggage to, from and between trains.

■ ■ That the handling of United States mail across the country is interstate commerce seems well settled. *Zenz v. Industrial Accident Commission,* 176 Cal. 304, 168 Pac. 364; *Cleveland, C., C. & St. L. Ry. Co. v. Industrial Commission,* 294 Ill. 374, 128 N. E. 516; *Dewing v. New York Central R. Co.,* 281 Mass. 351, 183 N. E. 754. This includes all participation in its movement, and it follows that the transfer of such mail from one train to another toward its further destination is just as necessary as its carriage across the state boundary. It closes the gap in the course of its transmission. That claimant was so engaged is not questioned, and we find that as such employee, he was engaged in interstate commerce. But this alone does not satisfy the statutory exemption above quoted. Was he an employee of a common carrier, so engaged?

■ This depends largely upon the classification of the trunk line railroads, with which the terminal company was under contract, and whose agent it thereby became. Nothing to the contrary being shown, we assume that these railroads were common carriers, by railroad, as specified by the federal act. While not deciding that this agency would constitute the terminal company a

common carrier, by railroad, and that it would thereby fall within the federal act, to the exclusion of the state industrial act, it is sufficient, if it became a connecting common carrier, to deprive the commission of jurisdiction.

By its control of passengers and their baggage, while on its property, it was engaged in interstate transportation, by this essential part of the movement. It was the facility and agency relied upon by the railroad companies to complete their engagement, and for which they could be primarily liable for the acts of its agent. This is well stated in *United States v. Brooklyn Terminal*, 249 U. S. 296, 39 Sup. Ct. 283:

"The service which it performs is distinctly public in character. * * * The fact that the railroad of the terminal is short does not prevent it from being a common carrier * * * nor does the fact that the thing which it undertakes to carry is contained only in cars furnished by the railroad companies with which it contracts. * * * True, the service is performed by the terminal under contracts with the railroad companies as agent for them and not on its own account. But a common carrier does not cease to be such merely because the services which it renders to the public are performed as agent for another."

The judgment is reversed.

Mr. Justice Hilliard dissents.

Mr. Justice Bouck not participating.