Joseph LaRue, Appellee, v. Indiana Harbor Belt Railroad Company, Appellant.

Gen. No. 39,035.

388

Opinion filed February 1, 1937.   Rehearing denied February 15, 1937.

SIDNEY C. MURRAY, MARVIN A. JERSILD and HAROLD E. CHRISTENSEN, all of Chicago, for appellant.

FINN & MILLER, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The plaintiff brought an action on the case in the superior court of Cook county against three carriers—the New York Central Railroad, the Baltimore & Ohio Chicago Terminal Railroad, and the Indiana Harbor Belt Railroad Company. At the close of all the evidence defendants (except the Indiana Harbor Belt R. R. Co.) were granted instructions in their favor. The cause was submitted to a jury which returned a verdict for plaintiff for $12,800, upon which the court, overruling motions for a new trial and in arrest, entered judgment. That judgment defendant asks us to reverse.

The material facts can hardly be said to be in dispute.  On and prior to July 4, 1933, the Michigan Cen-

tral Railroad was the owner of a freight car MC No. 82264. July 4, 1933, the P. & E. R. R. Co. turned this car over to the Big Four at Lyons, Illinois. July 5th the Big Four delivered the car to the New York Central R. R. at Parks Lake, Indiana. July 8, 1933, the New York Central R. R. delivered this car to defendant Indiana Harbor Belt R. R. Co. at Gibson, Indiana. When thus delivered it was an empty freight car. The next day the defendant caused the car to be inspected and it was marked O. K. by the inspector. July 11th thereafter defendant delivered this car to the Inland Steel Company at Indiana Harbor, Indiana. The steel company redelivered the car (loaded with sheet steel) to defendant. The car thus received was consigned to the Caine Steel Company at Cicero, Illinois, and routed to East Chicago, Indiana, by the B. & O. Chicago Terminal R. R. Co. The defendant Indiana Harbor Belt R. R. Co. transported the car thus loaded to East Chicago, Indiana, and it was there delivered to the B. & O. Chicago Terminal R. R. Co. on July 13th. The B. & O. C. T. R. R. Co. transported the car to the freight track of the Caine Steel Company at Cicero, Illinois, where it was placed for unloading on a private track connected with the railroad. While there is a stipulation that the car was placed on the Caine Steel Company's private track on July 14th, the evidence indicates that the car arrived and was placed on Saturday afternoon, and that on the following morning, July 16th, at about 8 a. m., the employees of the Caine Steel Company began unloading it.

Plaintiff was an employee of the Caine Steel Company, and while in the course of his employment, assisting in unloading the steel from this freight car, received an injury as a result of the floor of the car giving way because it was decayed. He was badly injured, losing his left leg. The track upon which this car was placed was a spur track which ran north and south, and the car was stopped immediately east of

and adjacent to the north door of the warehouse of the Caine Steel Company which was parallel to the spur track. On the day after plaintiff received his injury the car was moved about 60 feet south of where it stood at the time of the injury, and this movement was made by the B. & O. C. T. R. R. Co. A few days later the freight car was placed on defendant's repair track at Indiana Harbor, Indiana, where it was repaired by employees of defendant.

Plaintiff filed a complaint in two counts, in both of which he alleged ''that said defendant, Indiana Harbor Belt Railroad Company, a corporation, was in possession and control of its certain steam railroad system, railroad tracks, engines and cars in the State of Indiana and extending into the State of Illinois.'' In each count it was alleged that defendants were connecting railroad carriers, and that in the transportation and delivery of the freight car defendants and all the employees worked in interstate commerce; that defendants negligently inspected the car and negligently allowed the floor of the car to become and remain in a defective condition; that defendants knew that the car was to be used for transporting heavy freight, and by ordinary diligence would have so known and would have known of the defective condition of the car, and that plaintiff, while in the exercise of due care, was assisting in unloading the car when the floor of it gave way, injuring him.

Defendant Indiana Harbor Belt R. R. Co. moved for judgment on the pleading because of the alleged insufficiency of the amended complaint as amended. This motion was denied. Defendant then answered denying that it was engaged in interstate commerce at the time when plaintiff was injured, denying the negligence alleged, denying that plaintiff was in the exercise of due care, asserting that plaintiff assumed the risk of the alleged accident and injury. The cause

was submitted to a jury with the result heretofore stated.

Defendant in this court presents a single reason for reversal. It says that plaintiff had no right of action against defendant but was limited to his right to compensation from his employer under the Workmen's Compensation Act. That question was raised under the pleadings by the preliminary motion to dismiss. It was not set up in the answer. It was, however, stipulated upon the hearing that plaintiff and his employer, the Caine Steel Company, were at the time plaintiff was injured under the Workmen's Compensation Act. (See Illinois State Bar Stats. 1935, ch. 48, ¶¶ 201–236, pages 1589–1606; Jones Ill. Stats. Ann. 143.17–143.52; Smith-Hurd's Annotated Stats., ch. 48, secs. 139–143–148–166.) One of the ultimate issues submitted to the jury was whether defendant was at the time plaintiff received his injury engaged in interstate transportation. Attorney for plaintiff told the jury that there were three questions in the case: Whether defendant was negligent; whether plaintiff was in the exercise of due care; and whether defendant was engaged in interstate transportation. Defendant's attorney argued to the jury that defendant was not engaged in interstate commerce at the time plaintiff was injured, and at defendant's request the court gave an instruction (of which plaintiff does not complain) to the effect that if defendant ''at the time of the injury to plaintiff was not engaged in the work of interstate commerce,'' the jury should return a verdict of not guilty. After the jury retired and before rendering its verdict, the jury requested further instruction as to the law. Thereupon, attorney for the plaintiff prepared and the court, without objection from defendant, gave an instruction to the effect, ''that in determining the question of whether or not the plaintiff or defendant, or either of them, was engaged in

interstate commerce the test is whether or not the corporation or person was engaged in the transportation of freight from State to State, or in work so closely related to such transportation as to be practically a part thereof.'' It is apparent, therefore, that the cause was tried upon the theory that if defendant was not engaged in interstate transportation at the time of the injury, plaintiff was precluded from maintaining his action, and that if defendant was so engaged at that time it was not so precluded. The question was not squarely put in issue by the pleadings as to whether the relationship of plaintiff and his employer to the Workmen's Compensation Act was material, but it is apparent that counsel for both parties acquiesced in the theory that if defendant was at that time engaged in interstate transportation, section 29 of the Workmen's Compensation Act, Ill. State Bar Stats. 1935, ch. 48, ¶ 229; Jones Ill. Stats. Ann. 143.44, would not preclude plaintiff from maintaining his action as at common law for negligence. Both plaintiff and defendant tried the case upon this theory; they are therefore bound by their attitude upon that question in the trial court. *National Bank of Republic of Chicago v. Uptown State Bank,* 273 Ill. App. 401. The controlling issue upon this record is whether defendant, at the time plaintiff received his injury, was engaged in interstate transportation, or in work so nearly connected with it as to be a part thereof. If the evidence in the record sustains the verdict of the jury on this issue, then the judgment should be affirmed. If there is no evidence tending to show this ultimate fact, then the judgment should be reversed.

Defendant concedes, as many cases hold, that an employee may recover from a third party if such third party, while engaged in interstate commerce, is guilty of negligence which injures him. It has been so held in a large number of cases. The cases further hold that

where the evidence is susceptible of conflicting inferences the issue as to whether a defendant was engaged in interstate transportation at the time the plaintiff received his injury is one of fact for the determination of the jury. These cases also hold that the plaintiff is not in such case precluded from maintaining his suit by reason of the fact that at the time he received his injury he was working under circumstances which otherwise would limit his legal rights to the provisions of the Workmen's Compensation Act. *Goldsmith v. Payne,* 300 Ill. 119; *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Runge v. Chicago Junction Ry. Co.,* 226 Ill. App. 187; *McNaught v. Davis,* 229 Ill. App. 253; *Capelle v. Chicago & N. W. Ry. Co.,* 280 Ill. App. 471. Defendant contends there is no evidence in this record from which the jury could reasonably find that defendant, at the time plaintiff was injured, was engaged in interstate transportation, or in matters so nearly connected with it as to be a part of it. *Chicago & N. W. Ry. Co. v. Bolle,* 284 U. S. 74.

Preliminary to the consideration of that question it may be well to notice the nature of the wrong of which plaintiff complains. The complaint alleges negligence of defendant railroad in the inspection of a car about to be used in interstate transportation, and furnishing same for the transportation of merchandise from Indiana into Illinois. The complaint avers that, by the exercise of diligence, defendant must have known the car furnished to be dangerous and defective. Indiana was the place of origin of this alleged negligence. Illinois was the place where the injury which was the result of the negligence occurred, and the place where the cause of action therefor arose. In *Waldron v. Director General of Railroads,* 266 Fed. 196, 198, the court said: "A carrier, furnishing cars to be loaded for shipment, is liable for injuries to the *shipper or his employee,* due to a defect in the car which might have been

discovered by reasonable care in inspection. The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability *for injuries to an employee of the shipper.* If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, *the carrier and shipper are both liable to the injured employee;* for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe.''

The liability for negligence in one State with reference to the loading for carriage of property to be transported to another is not limited to carriers. *Wintersteen v. National Cooperage & Woodenware Co.,* 361 Ill. 95. The liability of carriers in interstate commerce for such negligence has been declared by the courts in many cases. *Chesapeake & Ohio Ry. Co. v. Cochran,* 22 F. (2d) 22; *St. Louis-San Francisco Ry. Co. v. Ewan,* 26 F. (2d) 619; *Sasnowski v. Mobile & O. R. Co.* (Mo. App.), 207 S. W. 865; *Hansen v. Ponder* (Tex. Com. App.), 300 S. W. 35. The general principle upon which defendants are held liable in this class of cases is well stated in *Colbert v. Holland Furnace Co.,* 333 Ill. 78, 81: ''One who supplies à thing for such use by others that it is obvious that any defect will be likely to result in injury to those so using it is liable to any person who, using it properly for the purpose for which it is supplied, is injured by its defective condition.''

In the *Wintersteen* case, *supra,* a party negligent in loading goods to be shipped to Pennsylvania was held liable at the suit of one injured there while unloading the car. Generally the only limitation of liability for

injury caused by such negligence is that the negligence must be the legal or proximate cause of the injury.

It must have been within the knowledge of the defendant, receiving a car of steel for shipment from Indiana to Illinois, that negligence with respect to the car furnished might (and probably would) result in an injury such as plaintiff sustained. Defendant contends that the interstate character of the car ceased when it was placed on the private track of the consignee. Plaintiff contends that the interstate character of this transportation did not end until the steel loaded in the car had been removed and delivered to the consignee. In Roberts Federal Liability of Carriers, vol. 2, sec. 747, page 1435, the author says: "A car loaded with freight, being moved from one state to another continues to be used in interstate commerce until it is delivered by a common carrier *to the consignee and unloaded.* Its interstate character then ordinarily ceases. It does not acquire a new status as an interstate commerce car until it is again assigned or used by the carrier for the purpose of moving traffic in interstate commerce. A movement of the car, therefore, in a terminal yard from one track to another after the conclusion of its interstate status during the first trip and before it is assigned or used in interstate commerce on the second trip, is local in character, that is, intrastate."

The author cites authorities from Federal and State jurisdictions.

Defendant, however, points out that this statement appears in a section which considers the question of *when a railroad employee* is engaged in interstate or foreign commerce. It says the section deals with employees engaged in the movement of cars, and argues that the rule stated is limited to such employees, quoting section 755 to the effect that, *"Railroad employees* assisting in loading or unloading freight . . . are

performing a service in aid of interstate transportation.''

Defendant says there is a distinction between the unloading of a car by the consignee's employees after the car has been finally delivered to the consignee on its private track and the unloading of interstate freight from a train at an intermediate station so that the train can proceed on its way. All this may be conceded without solving the problem of whether this jury was justified in holding that the duty of the carrier continued until and beyond the time when the car was unloaded and plaintiff injured. Defendant cites *Geraghty v. Lehigh Valley R. Co.,* 70 F. (2d) 300, and 83 F. (2d) 738, a case where a freight conductor was killed in the movement of cars on the private tracks of a consignee by reason, as claimed, of defective couplers violative of the Safety Appliance Acts. The Circuit Court of Appeals said: ''Interstate movement ceases when cars reach their destination and are merely *awaiting discharge by the consignee,* even though they must be moved again to get to the place of discharge, *Delaware L. & W. R. Co. v. Peck,* 255 F. 261 (C. C. A. 2); *Schauffele v. Director General,* 276 F. 115 (C. C. A. 3). To the same effect are *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, and *Lehigh Valley R. Co. v. Barlow,* 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070, for it can make no difference in respect to the interstate character of the movement whether the goods transported are the carrier's or the consignee's, nor how long they have been at rest after delivery.''

A careful reading of the case discloses that it is quite distinguishable from this in that there the cars were not only placed upon a private track or spur of the consignee but had been moved inside its inclosure! The movement of the car at the time of the injury

was entirely under the direction and control of the consignee. The injury to plaintiff resulted from alleged negligence in that movement. Here the injury was brought about by reason of the *defective nature of the instrumentality which was furnished by the defendant in an interstate transportation.* Here, also, neither the consignee nor any of its employees had assumed any duty whatsoever with respect to the inspection of the car at the time plaintiff was injured. It was not in their control or under their direction at that time, and they were in nowise responsible for the negligence which was the legal cause of plaintiff's injury.

Defendant relies very much on *Gratiot St. Warehouse Co. v. St. Louis, A. & T. H. R. Co.,* 221 Ill. 418, where the Supreme Court of this State said that the liability of the carrier ceased "where the carrier is not required in the usual course of business, or expected, to remove the freight from the car, as in the case of grain in bulk, coal, lumber and the like, by delivering the car in a safe and convenient position for unloading, at the elevator, warehouse or other place designated by the contract or required in the usual course of business, or, if no place of delivery is thus designated or required, on its side-track, in the usual and customary place for unloading by consignee."

The suit there was not for negligence causing a personal injury. The plaintiff sued, alleging negligence of the carrier with reference to the delivery of grain. It was held under all the circumstances that the carrier was not negligent. The opinion of the court also states that it had been contended by the plaintiff that the defendant carrier was liable because it provided a defective car which permitted rain, etc., to enter, injuring the grain, and the court said *if there had been proof of such fact* the defendant would have been liable. The case does not decide the question here

presented, nor does the expression, appearing in the stipulation, "private track" have significance in determining this question. As a matter of fact, such switch connections and tracks are a part of the railroad upon which it operates its trains, (see ch. 1, sec. 1, paragraph 9, of the Interstate Commerce Act, Mason's United States Code, Title 49) and the Supreme Court of the United States, in the *Los Angeles Switching* case, 234 U. S. 294, held "that the industrial spur tracks established within the carrier's switching limits, may constitute an essential part of the carrier's terminal system, for which the carrier cannot make an extra charge."

The precise question here is whether a carrier which negligently inspects and afterward furnishes in Indiana a defective car to be used in the transportation of heavy steel from the State of Indiana into the State of Illinois over the line of a connecting carrier, which has carried the car and placed it on the private spur track of the consignee, is, as to an employee of the consignee who is injured while unloading the car, engaged in interstate transportation. A jury has answered the question in the affirmative as to the facts, and the answer of this court must be in the affirmative unless it is held, as a matter of law, that the interstate character of the car had ceased at the time the plaintiff was injured. The precise question is not decided in any of the cases cited.

In *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177, Harrington was a switchman for the defendant; he was killed while engaged in switching coal, which had been standing on a storage track for some time, to a coal shed, where it was to be placed in bins or chutes and supplied as needed to locomotives, some of which were engaged in interstate and some in intrastate commerce. It was admitted that the coal was owned by the defendant company, and "had been in

storage in its storage tracks for a week or more prior to the time it was being switched into the coal chutes on the morning of the accident.'' The court held that the interstate movement of the car had long since ended; that the duty of Harrington was solely in connection with the removal of coal from the storage tracks to the coal shed, and that the coal might thereafter be used by *locomotives* in interstate hauls was no reason for invoking the Federal Act.

In *Lehigh Valley R. Co. v. Barlow,* 244 U. S. 183, plaintiff, a member of defendant's switching crew, was injured while assisting in placing three cars, containing supply coal for defendant, on an unloading trestle within defendant's yards at Cortland, New York. The cars had been received by defendant from Sayre, Pa. One of them was received July 3rd, the other two July 10th. These cars remained upon the sidings and switches until removed to the trestle on July 27th. The court held that the interstate movement ended before the cars left the sidings and reversed a judgment for plaintiff on the authority of *Chicago, B. & Q. R. Co. v. Harrington.* Defendant relies upon these cases, but in neither of them was the question of delivery to a consignee involved.

*Wetterer v. Atchison, T. & S. F. Ry. Co.,* 277 Ill. App. 275, in which certiorari was denied first by the Supreme Court of Illinois and afterward by the Supreme Court of the United States, 79 L. Ed. 1698, and *Pipal v. Grand Trunk Western Ry. Co.,* 341 Ill. 320, while not decisive are much in point. In the *Wetterer* case the court, after reviewing the authorities, said:

''Under all the controlling United States authorities, and doubtless all others so far as now known, unless the shipment in the car or cars has been received by the consignee *and stored without unloading,* so as to cause the interstate transportation to be then at an end, the interstate transportation is not termi-

nated until the shipment has been delivered to, or received by, the consigneee and unloaded. 2 Roberts on Federal Liability of Carriers, p. 1435, secs. 747, 755; *Moran v. Central R. Co.,* 88 N. J. Law 730, 96 A. 1023 (affirmed by U. S. Sup. Court Mem. Opinion, 245 U. S. 629, 38 S. Ct. 62, 62 L. Ed. 519); *Kepner v. Cleveland, etc. Ry. Co.,* 322 Mo. 299, 15 S. W. (2d) 825, 65 A. L. R. 599. . . . The rule as to when the interstate transportation ends applies where carrier and consignee are the same. This makes no difference. *Swain v. Terminal R. R. Ass'n,* 220 Mo. App. 1088, 291 S. W. 166; *Cruse v. Chicago, etc., R. Co.,* 133 Kan. 340, 299 P. 624; *U. S. v. Benson,* 234 U. S. 548, 34 S. Ct. 956, 58 L. Ed. 1459; *Public Utilities Comm. v. Landon,* 249 U. S. 236, 245, 39 S. Ct. 268, 63 L. Ed. 577.''

The cases, while distinguishable, are in harmony in holding that a carrier may be held liable by third parties injured through furnishing a defective car, whether the third persons are employees of consignor or consignee. It would seem that when a car is designated by the carrier in control of it for use in interstate transportation, it is impressed with an interstate status. The question here is, When does that interstate status terminate? Manifestly, as it seems to us, when the interstate use to which the car has been assigned ceases. The use to which this particular car was devoted was that of providing a safe container in which the merchandise with which it was loaded might be safely held until transportation was completed. That particular duty was not entirely dependent upon the movement of the car. The negligence of which defendant was found guilty was not negligence with respect to the movement of the car. It was negligence with reference to the provision of a proper container for the merchandise, in which it might be safely carried and from which it might be safely unloaded. So far as the interstate movement of the car was

concerned, it might be said to have terminated when it was safely placed at rest on the private track of the consignee, but that did not fulfill the entire interstate duty which defendant assumed. There was one more function necessary to be fulfilled, namely, that of affording to the consignee a safe place in which it might receive the merchandise and remove the same to its warehouse. Until this function was completely filled the interstate status of the shipment did not cease. It was as much the duty of the carrier to provide a safe freight car from which the merchandise might be unloaded in Illinois as it was its duty to provide a safe freight car for the loading of the car by the shipper's employees in Indiana. The interstate status there impressed was not removed and did not cease until the interstate function was fully performed. This could not be until the consignee had removed the last piece of merchandise from the car. We therefore hold that defendant was engaged in interstate transportation at the time plaintiff received his injury. If it can be said that there was an issue of fact with respect to that question, it is settled by the verdict of the jury. The negligence of defendant did not terminate at East Chicago, Indiana, when it turned the car over to its agent, the connecting carrier. *Denver Union Terminal Ry. Co. v. Industrial Commission,* 97 Colo. 129, 47 P. (2d) 392; *United States v. Brooklyn Eastern Dist. Terminal,* 249 U. S. 296, 63 L. Ed. 613.

The judgment is affirmed.

*Affirmed.*

O'CONNOR, J., concurs.

McSURELY, J., specially concurring: In my opinion where, as here, there is no dispute on the facts, the character of the transportation, whether inter or intrastate, is a question of law to be decided by the court.