THE PEOPLE *ex rel.* William C. Seip

*v.*

THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY.*

*Filed at Ottawa January 25, 1886.*

1.   TAXATION—*railroad property, by whom to be assessed.* Rolling stock and railroad track, as well as capital stock of railway companies, are by the statute required to be assessed for taxation by the State Board of Equalization, but all other railroad property is to be assessed by the local assessors.

2.   SAME—*what property to be listed as "railroad track."* Lands held by a railway company for right of way, when the road is located and in process of construction, are required to be returned as "railroad track," for taxation, and this, even though some of the lands acquired for right of way are occupied by tenants residing thereon. Actual use for railroad purposes is not essential to the property being classified as "railroad track," but it is enough that it has in good faith been acquired and is "held for right of way."

APPEALS from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. E. R. BLISS, for the appellant:

Rolling stock and railroad track, as well as capital stock, are to be assessed by the State Board of Equalization, but all other railroad property is to be assessed by local assessors, and the board of equalization has nothing to do with its valuations, except as a board of equalization. *Railroad Co.* v. *Siders,* 88 Ill. 325; *Railroad Co.* v. *People,* 98 id. 350.

The property as to which the court below overruled the objections, is all within the statutory denomination of "real estate other than railroad track."

Mr. CHARLES M. OSBORN, for the railroad company.

---

* With this case was heard *Chicago and Western Indiana Railroad Co.* v. *The People ex rel. Seip.*

Mr. Justice Sheldon delivered the opinion of the Court:

At the July term, 1883, of the county court of Cook county, on the application of the county collector for judgment for the unpaid taxes of 1882, objections having been made by the Chicago and Western Indiana Railroad Company to the entry of judgment against certain lands described in a list filed by it, the court overruled the objections as to certain of the property, and rendered judgment for the taxes, and from this judgment the railroad company appealed. The court refused to enter judgment as to certain other of the property mentioned in the list, and from this judgment the collector appealed. It was agreed that both appeals should be considered together.

It appears that in accordance with section 41, chapter 120, of the Revenue act, (Rev. Stat. 1874, p. 865,) the Chicago and Western Indiana Railroad Company made its schedule of property denominated "railroad track," for the year 1882, and returned it to the county clerk of Cook county. In this schedule was included, by specific description, all of the property which is embraced in both of these appeals. The return was made upon a form furnished by the State Auditor under section 273 of the Revenue act, and named schedule "A." Together with schedule "A," the railroad company was furnished with another form, named schedule "D," upon which it was required to list for local assessment all its real estate other than "railroad track." Schedule "D" was returned with the word "none" written upon it. All of this property returned in schedule "A" was assessed by the board of equalization, and the taxes extended upon this assessment the county collector collected of the railroad company. The local assessor, conceiving that these lots in question were improperly listed by the company in schedule "A," as a part of its "railroad track," proceeded to make an assessment of them himself, and upon this assessment made by him the taxes were also extended, and it is for these taxes judgment here

was asked.    Rolling stock and railroad track, as well as capital stock, are to be assessed by the State Board of Equalization, but all other railroad property is to be assessed by local assessors.  *Chicago, Burlington and Quincy Railroad Co. v. Siders,* 88 Ill. 325.

The material question arising, then, is, were the lots included in schedule "A" by the company, properly denominated "railroad track," under the Revenue law?—as, if they were, the local assessor had no power to assess them; if they were not, then the board of equalization had no power to assess them, and the assessment by the local assessor was valid. It is provided by section 40 of the Revenue act, that every corporation "owning, operating or constructing a railroad in this State, shall return sworn lists or schedules of the taxable property of such railroad."   By section 41 of the same act, such railroad corporations are required to file with the county clerks of the counties through which the railroad is located, a statement or schedule showing the property "held for right of way," and the length of the main and all side and second tracks, etc., and the value of the improvements and stations located on the right of way.   "New companies shall make such statement in May next after the location of their roads." By section 42, "such right of way, including the superstructure of main, side or second track and turn-outs, and the stations and improvements of the railroad company on such right of way, shall be held to be real estate, for the purposes of taxation, and denominated 'railroad track,' and shall so be listed and valued."

It thus appears that it is not necessary the road should be constructed, but if it shall be "located" and in process of construction, the company is to make the returns provided by law, and that all property which it holds for right of way is to be placed in its schedule of "railroad track."

The condition, as respects the railroad and the property in question, on May 1, 1882, as appears from the evidence, was,

that the railroad company was constructing its railroad; that it had located the road over the property, and had purchased all the property mentioned in these appeals, for its right of way, and held it for that purpose; that it had not acquired all the intervening property, but was proceeding, by condemnation and purchase, to acquire it all, so as to make continuous lines of road, and so as to actually use it all for tracks and stations, but that it had not, on May 1, 1882, continuous lines of track over the property. The property, mainly, is situate north of Twelfth street and south of Van Buren street, they being east and west streets, and between Third and Fourth avenues, running north and south, in the city of Chicago. The railroad was being operated from the south to a temporary passenger depot at Twelfth street. There were, at that time, four tracks across Twelfth street, connecting with the tracks south, but these tracks were not in use north of the south line of Twelfth street. Two tracks had been built across each of the intervening cross streets up to Van-Buren street, but there was not a continuous line of track north of Twelfth street. The road had been located to Van-Buren street. The company had suits for condemnation pending as to a large amount of other intervening property between Twelfth and Van Buren streets, and was negotiating for the purchase of the remainder. It had filled in some of the lots required, in preparation of them for the tracks. Some of this property already acquired had buildings upon it, and some of these buildings were occupied by tenants under the railroad company.

The position taken by the collector is, that it was only such property upon which tracks were laid, or as was in actual use by the company for railroad purposes, that could be properly classed as "railroad track," and the court below held with the collector, in part overruling the railroad company's objections as to all lots actually occupied by a building, and sustaining them as to the lots which were vacant. We per-

ceive no good reason for this distinction.      The accidental circumstance of some of the lots having buildings upon them at the time they were purchased by the railroad company, and the occupancy of the buildings being suffered to continue under the company, should not make a difference.      The lots were not purchased for the purpose of their occupancy by dwellings, or for the use of drawing rents from them, and were not, by a fair interpretation, being held for such a use ; but they, together with the vacant lots, were alike all purchased for railroad purposes, for right of way, and were alike all "held for right of way," and we think the improved and unimproved lots should be similarly viewed, as to being "railroad track" or not.

We regard it a too narrow construction that the property must have been in actual use by the railroad company for railroad purposes, to admit its being classified as "railroad track."      The requirement of the statute is, that schedule "A" shall show the property not actually used for right of way, but "held for right of way."      And we are of opinion, where property is circumstanced as all this was, the road being in process of construction, and the property in good faith acquired and held for right of way, and the delay of its immediate use for such purpose coming only from the non-acquirement of intervening property which was being obtained, that such property is to be considered as much a part of the "railroad track," as denominated in the Revenue law, as if tracks had been actually constructed upon it.      Five lots, it is admitted by the company's counsel, were improperly listed in schedue "A," but not one of these lots, we understand, is involved in either of the appeals.

The judgment as to the lots included in the collector's appeal will be affirmed, but as to the lots included in the railroad company's appeal the judgment will be reversed and the cause remanded.

*Judgment affirmed in part and in part reversed.*