BURLINGTON NORTHERN, INC., Plaintiff-Appellant, *v.* DEPARTMENT OF REVENUE, Defendant-Appellee.

(No. 59574;

First District (2nd Division)—September 9, 1975.

Richard J. Schreiber and Richard T. Cubbage, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, George H. Klumpner, and Gerald T. Rohrer, Assistant Attorneys General, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This appeal is taken from an order entered by the circuit court of Cook County affirming the action of the Department of Revenue of the State of Illinois (Department) which adopted the recommendations of its hearing examiner as to assessments made against the taxpayer-plaintiff, Burlington Northern, Inc., for its having failed to pay a use tax in Illinois on certain equipment owned and used by the plaintiff as an interstate carrier for hire. The assessments are based on an audit made by the Department of the taxpayer's records for November 1, 1964, to June 30, 1967. Of the several categories of equipment which were the subject of this audit, only three are presented for review by this court: 34 double-deck passenger cars (hereafter commuter cars), four diesel switching engines (hereafter locomotives) and certain containers and trailers used by the plaintiff and others in connection with trailer-on-flat-

car (TOFC) and container-on-flat-car (COFC) services. Since taxation of each of these categories creates and presents different legal issues for the court, each will be discussed separately in this opinion.

The following issues are raised by this appeal:

(1) whether the proposed tax causes a multiple burden on interstate commerce;

(2) whether the plaintiff's contested transportation vehicles are exempt from the Illinois Use Tax Act under the statutory rolling stock exemption; and

(3) are the findings of fact that there was a taxable use of the contested property within Illinois against the manifest weight of the evidence.

The final use tax assessments exclusive of penalties and interest are:

| Period | Tax Delinquency |
|---|---|
| 11/1/64 thru 6/30/65 | $147,619.12 |
| 7/1/65 thru 12/31/65 | 225,048.06 |
| 1/1/66 thru 6/30/67 | 124,863.37 |
| Total | $497,530.55 |

The tax assessments for the equipment at issue on this appeal as recommended by the hearing examiner are as follows:

| | |
|---|---|
| Commuter Cars | $277,370.09 |
| Containers and Trailers | 32,468.93 |
| Switch Locomotives | 17,898.72 |
| Total | $327,737.74 |

The only indication in the record that the Department approved the recommendations of the hearing examiner was the final tax assessments. Though the amounts finally assessed differed somewhat from the amounts recommended to be assessed, it is assumed that the Department accepted the examiner's reasoning in so approving the recommendations.

### Commuter Cars

In 1965, plaintiff purchased 34 passenger cars (also referred to in the record as double-deck, gallery and commuter cars) from a company in Pennsylvania, taking delivery at Lincoln, Nebraska. After delivery in Nebraska, all the cars were transferred on the same day to Chicago. The cars were, as plaintiff alleges, involved in interstate commerce from the time they entered Illinois through the audit period, though the extent of involvement is disputed. The hearing examiner made a finding of fact that the cars were not includible under the rolling stock exemption to

the Illinois Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3(b)),[1] in that the original intent and primary purpose of purchasing the cars was to move them in commerce within Illinois. No reference is made, in applying this standard, to actual, much less primary, *use*. The standard, though not found in either the statute or the Department's own rule 3[2] interpreting that statute, was deemed by the examiner to be necessary to avoid what he characterized as an impossible task of weighing "endless" variables to determine whether the interstate purpose of instrumentalities mainly purchased for intrastate use is significant enough to merit exemption.

The examiner made an additional finding that the commuter cars could not be characterized as rolling stock within the meaning of the exemption, a finding not only wholly unsupported by the record but also directly in conflict with the examiner's own comment at the hearing that the commuter cars were rolling stock.

The plaintiff presented evidence of substantial interstate use and involvement of these cars. Specifically there was evidence that the commuter cars themselves moved across State lines with paying passengers aboard on a number of occasions, and, that while on the Chicago to

---

[1] Section 3(b) of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3(b)), so far as pertinent, provides:

"To prevent actual or likely multistate taxation, the tax herein imposed does not apply to the use of tangible personal property in this State under the following circumstances:

*   *   *

(b) the use, in this State, of tangible personal property by an interstate carrier for hire as rolling stock moving in interstate commerce or by lessors under a lease of one year or longer executed or in effect at the time of purchase of tangible personal property to interstate carriers for-hire for use as rolling stock moving in interstate commerce as long as so used by such interstate carriers for-hire;"

[2] Illinois Use Tax Rule No. 3, so far as pertinent, provides:

"EXEMPTIONS TO AVOID MULTISTATE TAXATION

To prevent actual or likely multistate taxation, the tax shall not apply to the use of tangible personal property in this State under the following circumstances:

(b) the use, in this State, of tangible personal property by an interstate carrier for hire as rolling stock moving in interstate commerce;   *   *   *   'rolling stock' includes the transportation vehicles of any kind of interstate transportation company (railroad, bus line, air line, trucking company, etc.), but not vehicles which are being used by a person to transport property which he owns or which he is selling and delivering to his customers; railroad 'rolling stock' includes all railroad cars, passenger and freight, and locomotives or mobile power units of every nature for moving such cars, operating on railroad tracks, and includes all property temporarily stored for the purpose of being permanently attached to such cars or locomotives as an integral part thereof;   *   *   *."

Aurora runs within Illinois on which these cars were mainly used, they carried both passengers who either originated or culminated their journeys in other States, and mail and express packages which, stored just inside the doors of the cars, were delivered along the route. Revenues from transporting express packages over the three years included in the audit were totaled at $24,682 and mail revenues at $98,845. In spite of the evidence of the extent and nature of interstate use and involvement of these cars, plaintiff alleged that there is no practicable manner of determining the total amount of revenue each car produces, much less that produced in interstate use and involvement, and this court can find no basis in the record to dispute that allegation.

## Locomotives

The diesel switching engines were purchased in Illinois, delivered in Iowa, and initially used for a year in Nebraska for switching and, allegedly, interstate uses. The auditor concluded that the engines were then "permanently assigned" to Illinois—a conclusion not apparently concurred in by the examiner. This conclusion was based solely on a letter obtained from the files of the plaintiff stating that they had been "assigned" to Illinois. At the hearing plaintiff alleged that such terminology may have been used simply for Federal inspection purposes. The locomotives, though defined by C. J. Bryan, manager of operations for the plaintiff, as "any motive power that would be used to switch, [and] classify box cars, flat cars, any type of rolling stock, and assembly into a train," were also capable of and were, in fact, used on an unspecified number of occasions for interstate travel. No sales or use taxes were paid on these locomotives in any State. The examiner found these locomotives not to be within the rolling stock exemption since they were not "for hire" as, he believed, was required by the statute and were instead, he felt, used "solely for the benefit of the Taxpayer," whereas the trial court found them not to be exempt because the statute, he believed, required actual physical movement of the equipment across State lines.

## Containers and Trailers

The equipment classified as "trailers" was purchased in 1965 from Burlington Truck Lines which, though a wholly-owned subsidiary of the plaintiff, allegedly maintained complete independence from it. A "trailer" is the back or cartage portion of a truck to which "bogies" have been attached. A "bogie" was defined at the hearing by R. V. Jabens, manager of transportation for the plaintiff, as "two pair of tandem wheels in a framework, with air brakes and hose attachments for hooking to the brake system of a tractor [or cab], to attach a container for

movement over the streets and highways." The trailers were used throughout the United States by plaintiff and other interstate carriers as part of their trailer-on-flat-car (TOFC) service.

The equipment classified as "containers" was purchased in Alabama and delivered, along with some chassis, in Kentucky. Containers are essentially trailers without wheels. Once wheels are affixed, by means of attaching a chassis, a container is substantially similar to a trailer "with rear doors, and, in some cases a side door." When a container with chassis attached is connected to a cab or tractor it becomes a truck capable of travel upon the highways. The containers were purchased and have been utilized for the specific purpose of transporting pineapple products from the State of Hawaii to many points in the continental United States. In transit, on plaintiff's and other carrier's rails, the containers have been chained to the flat cars.

The trailers and containers were clearly not "permanently affixed" to the flat cars as such action would wholly destroy the purpose behind TOFC and COFC services, namely, to provide rail-truck service to parties who cannot be reached by rail alone or for whom the cost of using a box car is impractical or unprofitable. Though the containers and trailers were not "permanently affixed," as required by the Department's regulations of certain property specifically includible under the exemption, they were not so includible. The trial court held that only cars and vehicles in actual operation were exempt as rolling stock, and that containers and trailers loaded on flat cars were therefore not exempt.

## I.

The plaintiff, dissatisfied with the audit, requested a departmental hearing. Thereafter the hearing examiner issued a report with recommendations. The Department issued its final assessments based on, so far as we can assume from the record, the recommendations of the hearing examiner. The plaintiff, dissatisfied with the final assessments, petitioned for review under the Administrative Review Act[3] to the circuit court of Cook County. The trial court found, as to the items involved in this appeal, "that the findings and judgments of the Department of Revenue * * * are not against the manifest weight of the evidence, are supported by the evidence * * * are correct and should be affirmed." Judgment was thereupon entered in the amount of $459,070.41 plus interest and penalty in the amount of $312,816.65. As we hereafter explain, we find the said judgment is erroneous and must be reversed for the various reasons hereinafter discussed.

---

[3] See Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*, for the Administrative Review Act.

## II.

The threshold question—affecting each of the three categories involved in this appeal—is whether the presence or absence of a multiple burden on interstate commerce through State taxation is relevant to this inquiry.

■■ The Illinois Use Tax Act[4] provides that "[a] tax is imposed upon the privilege of using in the State tangible personal property purchased at retail from a retailer." (Ill. Rev. Stat. 1971, ch. 120, par. 439.3.) This Act was passed to complement and prevent evasion of the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*; *Boye Needle Co. v. Department of Revenue* (1970), 45 Ill.2d 484, 487, 259 N.E.2d 278; *United Air Lines, Inc. v. Mahin* (1971), 49 Ill.2d 45, 47, 273 N.E.2d 585, *aff'd* (1973), 410 U.S. 623.) In order to "prevent actual or likely multistate taxation" the statute further provides in section 3(b) (par. 439.3(b)) for the exemption of tangible personal property by an interstate carrier for hire as rolling stock moving in interstate commerce.

Plaintiff contends that it was entitled to an exemption as an interstate carrier for hire moving rolling stock in interstate commerce on all equipment in issue regardless of whether a multiple burden exists or not.

The Department argues that, since no sales or use tax has been paid on any of the equipment in issue and since credits would have been allowed if any had (Ill. Rev. Stat. 1971, ch. 120, par. 439.3(c)), there is no possibility of a multiple burden on interstate commerce and thus no reason for the exemption.

The authorities relied upon by the Department concerning multiple burdens and their effect on State taxation, are inapplicable to the present case in that they all involve either *ad valorem* property taxes (*Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment* (1954), 347 U.S. 590, 98 L.Ed. 967, 74 S.Ct. 757; *Standard Oil Co. v. Peck* (1952), 342 U.S. 382, 96 L.Ed. 427, 72 S.Ct. 309; *Central R.R. Co. v. Pennsylvania* (1962), 370 U.S. 607, 8 L.Ed. 2d 720, 82 S.Ct. 1297, *rehearing denied*, 371 U.S. 856 (company incorporated in taxing State); *Northwest Airlines, Inc. v. Minnesota* (1944), 322 U.S. 292, 88 L.Ed. 1283, 64 S.Ct. 950, *rehearing denied*), or commerce having come to an end and the property having acquired a situs within the taxing State. *Henneford v. Silas Mason Co.* (1937), 300 U.S. 577, 579, 81 L.Ed. 814, 57 S.Ct. 524, (equipment brought to construction site within State and used there); *Philco Corp. v. Department of Revenue* (1968), 40 Ill.2d 312, 239 N.E.2d 805 (computer systems leased by plaintiff for use on construction site within State).

As to the applicability of *ad valorem* taxes to use tax cases, plaintiff

---

[4] Ill. Rev. Stat. 1971, ch. 120, pars. 439.1 to 439.22.

notes in its brief, and we agree, that "all of taxpayer's rolling stock is assessed on a [non-discriminatory] basis under the Illinois *ad valorem* property tax. The distinction is that there is no rolling stock exemption in the Illinois Property Tax Act and it is assessed on an allocated non-discriminatory basis." Ill. Rev. Stat. 1971, ch. 120, par. 563(9); *People ex rel. Seip v. Chicago & Western Indiana R.R. Co.* (1886), 116 Ill. 181, 4 N.E. 480.

In *Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 82 L.Ed. 823, 58 S.Ct. 546, 115 A.L.R. 944, a case cited by the Department as the origin of the "multiple burden" test, the Supreme Court inexplicably affirmed a gross receipts tax imposed on a local trade journal which solicited and received occasional advertisements from out-of-State businesses. A small number of its copies were circulated out of State. Although the Supreme Court noted that interstate business "must pay its way" in the various States (303 U.S. 250, 254), the Court commented that they viewed the interstate character of the journal's business as so insignificant that there was no risk that the tax incidents would be taxed again in another State (303 U.S. 250, 259). The Court made it clear, however, that "the commerce clause [does not] relieve those engaged in interstate commerce from their just share of state tax burden" (303 U.S. 250, 254), where multiple burdens will not be imposed.

■■ The Department attempts to justify taxation of property used in interstate commerce where no sales or use tax has been paid by arguing the impossibility of multiple taxation due to the credit provisions of the Use Tax Act. (Ill. Rev. Stat. 1971, ch. 120, par. 439.3(c).)[5] As to the use tax, however, it is to be noted that separate exemptions are made for the rolling stock of interstate carriers for hire (subsection (b)) and property brought into Illinois upon which a use tax has been paid (subsection (c)). No reason has been found to believe that the legislature intended the one exemption to be contingent upon the other. Thus, the Illinois legislature apparently intended to exempt rolling stock moving in interstate commerce from being subject to the use tax *regardless* of the potentiality of multiple taxation. Likewise, nothing in the revenue statutes prohibits a taxpayer from legally minimizing his, her or its taxes. While it is true that grants of tax exemption are to be given a strict interpretation against the taxpayer and in favor of the taxing power (*Bingler v.*

[5] Section 3(c) (par. 439.3(c)) provides that the use tax shall not be levied where:

"(c) the use, in this State, of tangible personal property which is acquired outside this State and caused to be brought into this State by a person who has already paid a tax in another State in respect to the sale, purchase or use of such property, to the extent of the amount of such tax so paid in such other State;"

*Johnson* (1969), 394 U.S. 741, 751-52, 22 L Ed 2d 695. 89 S.Ct. 1439; *Atlantic Coast Line R.R. Co. v. Phillips* (1947), 332 U.S. 168, 172, 91 L.Ed. 1977, 67 S.Ct. 1584, 173 A.L.R. 1; *City of Lawrenceville v. Maxwell* (1955), 6 Ill.2d 42, 47, 126 N.E.2d 671; *Rogers Park Post No. 108 · v. Brenza* (1956), 8 Ill.2d 286, 290, 134 N.E.2d 292), even a strict interpretation of this statute does not justify making the rolling stock exemption contingent on eligibility for the credit exemption. We therefore find the Department's arguments in this regard to be without merit.

### III.

We next consider the issue of whether the Department erred as a matter of law in concluding that an original intent and primary purpose standard was applicable in determining whether the rolling stock exemption applied to plaintiff's equipment in issue on this appeal. The resolution of this question directly applies to the question of whether the 34 commuter cars are subject to the use tax. The Department argues for the use of this standard by contending that the intent of the legislature in enacting the rolling stock exemption was merely to prevent the use tax from applying to interstate commerce in transit through the State.

We have not been referred to, nor do we find, Illinois cases discussing the legislative intent in enacting the rolling stock exemption. A search of the applicable House and Senate Journals is equally fruitless, save for a House amendment which was *not* included in the final bill, limiting subsection (b) to use by persons "engaged in interstate transportation in the actual conduct of such transportation." (Journal of the Senate of the Sixty-Ninth General Assembly of Illinois 1678 (1955).) In the absence of such legislative history, one must turn to the general principles of statutory construction. As already noted, grants of tax exemption are strictly interpreted against the taxpayer and in favor of the taxing power (*Bingler v. Johnson; City of Lawrencev'lle v. Maxwell*), and the burden is upon the one claiming the exemption to clearly show that the property is within the exemption. *City of Lawrenceville v. Maxwell* (1955), 6 Ill. 2d 42, 48.

As plaintiff points out, however, an interpretation placed upon a statute by an administrative official cannot alter its plain language. In the case plaintiff cites in support of this proposition, *Morrill v. Jones* (1883), 106 U.S. 466, 27 L.Ed. 267, 1 S.Ct. 423, a revenue statute allowed animals imported for breeding purposes to enter the United States duty-free subject to regulations by the Secretary of the Treasury, whose subsequent *regulation* limiting the duty exemption to animals of "superior stock" was judged an excessive exercise of the power granted and solely within the province of the legislature. In Illinois, administrative interpretations

"while often helpful, are not binding" (*Mahon v. Nudelman* (1941), 377 Ill. 331, 334, 36 N.E.2d 550), and thus the courts must, in the last analysis, look to the statute itself.

In the present case, both the statute and the regulation interpreting it grant an exemption to interstate carriers for hire as to property used as rolling stock moving in interstate commerce without reference to dual, primary, or predominant uses or purposes. Contrary to the parties' assertions on oral argument, a search of the use tax statutes of the various jurisdictions uncovered *no* rolling stock exemptions which have been adopted with any kind of primary purpose or use standard, whether at the time of purchase or thereafter, although some limit their exemptions to "bona fide interstate commerce." La. Rev. Stat. Ann. § 47.305(5) (1970); Tenn. Code Ann. § 67—3007 (1955).

We can find no basis in the record for the Department's limitation of this exemption other than the alleged difficulty the Department would encounter in having to take into account such "endless variables" as the mileage an instrumentality travels, the number of days it is used in interstate commerce, and the purposes for which an instrumentality is used. The standard which the Department would interpose—the original intent and primary purpose of the carrier at the time of purchase—would exclude from the coverage of the exemption not only instrumentalities *substantially* but not primarily used in interstate commerce, but also those *primarily* used in interstate commerce where such was not the original intent and initial primary purpose. No doubt exists that such results would unduly burden interstate commerce. More relevant to the present inquiry, such a standard, regardless of results, is not at all justified by reference to either the statute or the regulation.

It is clear from the evidence presented at the hearing that the interstate use and involvement of the passenger cars here in issue was as intertwined with intrastate use as were the uses of the telephones in *Cooney v. Mountain States Telephone & Telegraph Company* (1935), 294 U.S. 384, 391, 79 L.Ed. 934, 55 S.Ct. 477. In *Cooney*, the district court found and the Supreme Court affirmed that the telephone company's telephones were instrumentalities of both intrastate and interstate commerce, and that the company could not "'discontinue its intrastate business and operations in Montana without virtually destroying and being compelled to abandon and withdraw from its interstate and foreign business.'" 294 U.S. 384, 388.

■■ While the actual physical interstate journeys by the passenger cars in the present case appear from reviewing the record to be on each occasion separate incidents, and thus do not appear to be intertwined with plaintiff's interstate business, the other factors making up its inter-

state business—the intrastate passengers and the mail and express packages—are so intertwined. Contrary to the finding of the Department, where passengers or goods traveling from one State to another are transported as part of that interstate journey by an agency which carries them solely within one State, the intrastate portion of the journey becomes interstate. (*United States v. Yellow Cab Co.* (1947), 332 U.S. 218, 228-29, 91 L.Ed. 2010, 67 S.Ct. 1560; *New York, New Haven & Hartford R.R. Co. v. Nothnagle* (1953), 346 U.S. 128, 130-31, 97 L.Ed. 1500, 73 S.Ct. 986; *Norfolk & Western R.R. Co. v. Pennsylvania* (1890), 136 U.S. 114, 119-20, 34 L.Ed. 394, 10 S.Ct. 958.) Indeed, to bring a journey within the taxing power of the State as part of its domestic commerce, the subject transported, whether persons or goods, must be under the exclusive jurisdiction of the State for the entire journey. (*Hanley v. Kansas City Southern Ry. Co.* (1903), 187 U.S. 617, 620, 47 L.Ed. 333, 23 S.Ct. 214; *Wabash, St. Louis & Pacific Ry. Co. v. Illinois* (1886), 118 U.S. 557, 564-65, 30 L.Ed. 244, 7 S.Ct. 4.) In determining whether the passenger is, or is about to, travel interstate, the intent of the passenger is controlling. (*New York, New Haven & Hartford R.R. Co. v. Nothnagle; United States v. Yellow Cab; Sprout v. City of South Bend* (1928), 277 U.S. 163, 168, 72 L.Ed. 833, 48 S.Ct. 502, 62 A.L.R. 45.) The interstate nature of the mail and express packages carried by the plaintiff similarly imparts interstate status to the plaintiff's activities within Illinois. The Federal case cited in support of express packages having this effect, *United States v. Colorado & N. W. R. Co.* (8th Cir. 1907), 157 F. 342, actually involved an *intrastate* carrier rather than an interstate one, as plaintiff indicates, suggesting that courts are willing to extend this transfer effect even to carriers not otherwise involved in the interstate process. Combining plaintiff's "13%" of actual physical movement across State lines with the interstate movement conferred on plaintiff as carrier of interstate traffic, we hold that plaintiff's interstate use and involvement is indeed intertwined with its intrastate use, and that plaintiff should not be denied an exemption clearly authorized by the Illinois statute for the sake of administrative convenience and on the basis of a standard not apparently within the contemplation of the legislature. Thus we hold that the deficiency assessment as to the 34 commuter cars was in error, both as a matter of law as well as against the manifest weight of the evidence.

## IV.

The next issue before the court is whether the court below erred in affirming the Department in its denying the plaintiff's switching engines inclusion within the rolling stock exemption. The examiner had recom-

mended such denial on the ground that they "were not at any time for hire, [and] were used solely for the benefit of the Taxpayer," basing his recommendation on the Department's rule 3. However, in both rule 3 and, more importantly, the statute, the words "for hire" follow the words "interstate carrier" rather than the words "rolling stock moving in interstate commerce." (Ill. Rev. Stat. 1971, ch. 120, par. 439.3(b); Illinois Use Tax Rule No. 3.) Since words in tax measures are to be given their common and ordinary meaning (*Old Colony R.R. Co. v. Commissioner of Internal Revenue* (1932), 284 U.S. 552, 560, 76 L.Ed. 484, 52 S.Ct. 211; *Revzan v. Nudelman* (1938), 370 Ill. 180, 184-85, 18 N.E.2d 219), it seems reasonable that ordinary sentence construction should also be applied. Thus, it seems far more common and ordinary to assume that the words "for hire" modify "interstate carrier" rather than "rolling stock." However, even if the statute and the rule did require, as they do not, that the rolling stock must be "for hire" in order to qualify for the exemption, the switching engines would qualify since, as plaintiff points out, the shipper is paying for all incidents essential to the transportation of his goods, including switching operations.

Defendant infers that plaintiff was evading Illinois taxes in its initial purchase of the engines in Illinois, delivery in Nebraska, use for a year in Nebraska, and subsequent transfer back to Illinois. It is difficult to understand how these circumstances could be evasive when, under section 3 of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3), property "acquired outside this State" is defined in the context of the exemptions to the use tax to include property purchased in Illinois and delivered outside Illinois. No provision prohibits a transfer of the property back to Illinois. There is nothing in this record that establishes evasion, and thus defendant's citation to *Turner v. Wright* (1957), 11 Ill.2d 161, 142 N.E.2d 84, is not applicable. Once again, it must be emphasized that nothing in the revenue statutes prevents a taxpayer from legally minimizing, in contrast to evading, his, her or its taxes. Furthermore, the Department's citation of cases in which a taxable incident is created is not to the point. *Henneford v. Silas Mason Co.*, as discussed previously, is inapplicable in that it involved commerce having ended and the property having come to rest within a State. The two other cases cited in support of the Department's contention are equally inapplicable. In *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389, the court upheld a storage and use tax imposed on equipment and supplies brought into California and stored and "consumed" within the State. The Court noted a distinction which is applicable here between two taxes in *Puget Sound Stevedoring Co. v. Tax Commission* (1937), 302 U.S. 90, 94, 82 L.Ed. 68, 58 S.Ct. 72. While one tax on the business of

stevedoring—loading and unloading interstate cargoes—was held invalid as a burden on interstate commerce, another tax on the business of *supplying* longshoremen was held valid as a tax on the local activity of conducting an employment agency. 306 U.S. 167, 179.

The plaintiff is quite correct in asserting that the Supreme Court distinguished the *Southern Pacific* case from the situation presented by the case now before the court in its subsequent decision, *Joseph v. Carter & Weekes Stevedoring Co.* (1940), 330 U.S. 422, 431, 91 L.Ed. 993, 67 S.Ct. 815, in which it observed that the prior case "turns expressly on our conclusion that a use tax is validly levied on an intrastate event, 'separate and apart from interstate commerce.'" As will be subsequently discussed, whatever intrastate activities the switching engines may be involved in are almost wholly intertwined with interstate activities.

In *United Air Lines, Inc. v. Mahin* (1973), 410 U.S. 623, 35 L.Ed.2d 545, 93 S.Ct. 1186, the Illinois Supreme Court had upheld the exclusion of aviation fuel—stored in and loaded aboard airplanes in Illinois and consumed in interstate flights—from the temporary storage exemption to the Illinois use tax. (*United Air Lines, Inc. v. Mahin* (1971), 49 Ill.2d 45, 273 N.E.2d 585.) The United States Supreme Court, in affirming that decision, distinguished between a valid tax on *stored* fuel later consumed in interstate commerce *as* it was being loaded aboard the airplane and an invalid tax on fuel *being* consumed in interstate commerce. (410 U.S. 623, 629.) The Court also noted that, in its view of the facts, the plaintiff would have no difficulty calculating the amount of fuel taxable without placing an undue burden on interstate commerce. In the present case, the cars and engines switched by the engines in question have a potential of interstate travel far beyond the plaintiff's—or anyone else's—record-keeping capabilities. On their way from their initial origin and to their ultimate destination, the cars and engines *may* cross State lines many times. In addition, interstate character may be imparted to the cars and engines by other means than actual physical movement such as the passengers, mail and express packages traveling interstate. If it were necessary to keep a permanent record of the intermediate and ultimate destinations of each car switched, the result could be an immense paper clog in an already hectic and complex process. Our concern, of course, is not with the practical burdens imposed upon the plaintiff, but rather that even if such a process were required, there can be no assurance that it would be possible to determine the desired result and thus no assurance that interstate commerce exempted by the rolling stock exemption would not be taxed.

The issue presented in this regard is whether switching operations,

physically conducted wholly within one State, can be considered to be "moving within interstate commerce" when the cars and engines switched are moving in interstate commerce. The circuit court was of the opinion that they could not. The cases, however, suggest the opposite conclusion. This court held, in *LaRue v. Indiana Harbor Belt R.R. Co.* (1st Dist. 1937), 288 Ill.App. 387, 6 N.E.2d 284, that a car loaded with freight remains in interstate commerce until the car is both delivered to the consignee *and* unloaded at which time its interstate character ceases (288 Ill.App. 387, 395), and further held that railroad employees assisting in loading and unloading freight from the car are " "* * * performing a service in aid of interstate transportation.' " (288 Ill.App. 387, 395-96.) Thus the more direct connection with interstate activity involved in switching cars to continue their journey to other States would also be considered interstate commerce. Even where a car is being temporarily stored, the interstate character has not been lost. In *Brown v. Illinois Terminal Co.* (1925), 319 Ill. 326, 150 N.E. 242, 151 A.L.R. 1, a negligence action in which movement in interstate commerce was dispositive, the Illinois Supreme Court held a two-day placement of a car at its storage yards to be only a temporary interruption and not sufficient to remove it from interstate commerce. 319 Ill. 326, 335.

The United States Supreme Court apparently views switching operations as part of interstate commerce as well. In determining whether a train terminal company, which hired out its services to several interstate carriers and owned and operated no cars or engines itself other than switching engines, engaged in interstate commerce such that its employees were protected by Federal legislation, the Court held, in *United States v. Brooklyn Eastern District Terminal* (1919), 249 U.S. 296, 303, 307, 63 L.Ed. 613, 39 S.Ct. 283, 16 A.L.R. 527, that it was so engaged and the employees so protected. The Court noted that "[i]f these terminal operations were conducted directly by any, or jointly by all, of the ten railroad companies with which the Terminal has contracts, the operations would clearly be within the scope of [the Federal legislation]." 249 U.S. 296, 305.

■■ The present case involves an interstate carrier for hire rather than a local business conducting terminal switching activities and thus this equipment was clearly being used in interstate commerce. This is true without taking into account the actual physical interstate movements which the switching engines were also allegedly engaged in. In our opinion the examiner erred in his interpretations of the rolling stock exemption in regards to the engines, and the circuit court erred in not ruling the examiner's findings to be against the manifest weight of the evidence.

## V.

The final issue before this court is whether the examiner and the circuit court erred in denying plaintiff's containers and trailers inclusion within the rolling stock exemption. The plaintiff contends that the containers and trailers are instrumentalities of interstate commerce and as such are part of the rolling stock of a railroad, while the Department contends that they are not includible since they are "not permanently affixed" to cars or locomotives.

Once again the court is confronted with a lack of legislative intent in trying to determine whether these containers and trailers fit within the legislature's conception of "rolling stock." Judicial interpretation has been scarce, but a leading definition was provided by the Illinois Supreme Court in 1880. Defining the various classes of railroad property for purposes of taxation under the then existing Revenue Act, the court, in *Ohio & Mississippi R.R. Co. v. Weber* (1880), 96 Ill. 443, 448, *rehearing denied*, described "rolling stock" as:

> "* * * the *movable* property belonging to the corporation * * * [which is] such property as in its ordinary use is taken from one part of the line to another, such as cars, locomotives and their attachments and usual accompaniments." (Emphasis in original.)

We have not located any further definition in Illinois of "attachments and usual accompaniments." In one of the few interpretations of the *Weber* definition, the Montana Supreme Court held cooking utensils used by a railroad aboard a boarding car to be "a necessary and usual accompaniment" and part of the rolling stock of a railroad. *Great Northern Ry. Co. v. Flathead County* (1921), 61 Mont. 263, 269, 202 P. 198.

A search of the use tax statutes of the various jurisdictions sheds little light on the meaning of "rolling stock." Only one jurisdiction specifically speaks of trailers and containers and it includes them in their definition of rolling stock. (N.M. Stat. Ann. § 72—16A—12.18 (1973 Supp).) Fifteen jurisdictions other than Illinois have rolling stock exemptions to their use tax statutes. Ariz. Rev. Stat. § 42—1409(B)(7) (West Supp. 1974-1975); Ark. Stat. § 84—3105.1(A) (1973 Supp.); Iowa Code Ann. § 423.4(6) (1975-1976 Supp.); Ky. Rev. Stat. § 139.480(1) (1974 Supp.); Minn. Stat. Ann. § 297A.25(1) (1972); Miss. Code. Ann. § 27—67—7(i) (1972); Mo. Ann. Stat. § 144.030, subd. 3(10) (Vernon 1975 Supp.); Neb. Rev. Stat. § 77—2704(3)(a) (1971); N.M. Stat. Ann. § 72—16A—12.18 (1973 Supp.); N.D. Cent. Code Ann. § 57—40.2—04(5) (1972); Okla. Stat. Ann. tit. 68, § 1404(g) (1966); Code of Laws of S.C. §§ 65—1404 (20), 65—1422(2) (1962 & 1973 Supp.); S.D. Compiled Laws Ann.

§§ 10—28—1, 10—46—7, 10—46—10 (1967 & 1974 Supp.); Tex. Civ. Stat. —Taxation-General tit. 122A, art. 20.04(S) (Vernon 1969); Wash. Rev. Code Ann. § 82.12.030(4) (1974 Supp.).

The Illinois legislature has used the term (in addition to its use in the Retailers' Occupation Tax Act as already mentioned) in another context—in its adoption of the Uniform Commercial Code. In UCC § 9—103 (3)(a) (Ill. Rev. Stat. 1971, ch. 26, sec. 9—103(3)(a)) "rolling stock" is included as an example of "goods which are mobile and which are of a type normally used in more than one jurisdiction." No light is provided as to what the Illinois legislature or the framers of the Code would have included in rolling stock by reference to the Code comments.

The Department upheld the auditors' denial of the exemption because the trailers and containers are not permanently affixed. This view fails to take into account the modern realities of railroading. The economic, technological and commercial changes which necessitate involvement in TOFC and COFC services were probably not contemplated by the legislature in 1955 when the statute was first passed. The evidence established that the trailers and containers here in issue were used exclusively in interstate commerce throughout the United States.

Trailers and containers would no doubt today be considered to be included within those essential instrumentalities of transportation which the legislature contemplated as desirable to save from taxation under the category of rolling stock. Essentially, it is within the province of the legislature to determine the status of trailers and containers in relation to the rolling stock exemption. In the absence of legislative intent, this court looks for guidance to the statute and its interpretation by the Department of Revenue.

■■ Rule 3(b) contains the following language: "* * * 'rolling stock' includes the transportation vehicles of *any* kind of interstate transportation company * * * railroad 'rolling stock' includes *all* railroad cars * * * and includes all property temporarily stored for the purpose of being permanently attached to such cars * * * as an integral part thereof; * * *. (Emphasis supplied.) In our opinion this language is broad enough to include the containers or trailers. In our opinion the trailers and containers are within the contemplation of the rolling stock exemption. The trial court below was quite correct in emphasizing the need for legislative guidance in this matter. In that the legislature has not so acted, this court finds the trailers and containers—essential to the conduct of modern railroading and used exclusively in interstate commerce—to be includible within the rolling stock exemption to the Illinois Use Tax Act.

## VI.

In summary then it is the holding of this court that tax assessments for the periods January 1, 1964, through June 30, 1967, on the 34 commuter cars and accessories, containers and trailers and diesel switch engines were in error. Therefore, as to those items the judgment of the circuit court of Cook County is reversed and remanded for proceedings not inconsistent with these findings. Such proceedings will require a determination of the proportion of the final assessment affected by this holding and a recomputing of the tax assessments, interest and penalties in accordance with the views expressed herein. In all other respects the judgment is affirmed.

Reversed and remanded in part; affirmed in part.

STAMOS and LEIGHTON, JJ., concur.